**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CHICAGO ORNAMENTAL IRON, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SELECTIVE INSURANCE COMPANY OF | ) | No. 1:25-cv-05131 |
| AMERICA, a New Jersey corporation, and | ) | |
| ASSUREDPARTNERS OF ILLINOIS, LLC, | ) | |
| an Illinois limited liability company, | ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**FIRST AMENDED ANSWER OF**
**DEFENDANT ASSUREDPARTNERS OF ILLINOIS, LLC**

Defendant AssuredPartners of Illinois, LLC ("AssuredPartners"), by and through its

undersigned counsel, for its First Amended Answer to Plaintiffs' Complaint, states and alleges as

follows:

**Parties, Jurisdiction, and Venue**

1.      Plaintiff Chicago Ornamental Iron, Inc. ("COI") is an Illinois corporation. COI

engineers, designs, details, fabricates and erects a wide array of custom metal structures from

structural steel to high end finished metal in brass and nickel silver. COI completes all aspects of

its fabrication and assembly in-house at its 62,500 sq. ft. fabrication facility located at 4340 W.

47th St, Chicago, IL 60632 (the "Building").

**ANSWER:**      AssuredPartners is without sufficient knowledge or information to admit or

deny the allegations set forth in paragraph 1 of the Complaint and, therefore, denies the same.

1

2.      Plaintiff 4340 W. 47th St. LLC is an Illinois limited liability company and the owner of record of the real property located at 4340 West 47th Street, Chicago, Illinois 60632.

**ANSWER:**    On information and belief, AssuredPartners admits that plaintiff is an Illinois limited liability company. AssuredPartners is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 2 and, therefore, denies the same.

3.      Plaintiff 4340 Holdings LLC is an Illinois liability company and the owner of record of certain real property located adjacent to 4340 West 47th Street, Chicago, Illinois 60632.

**ANSWER:**    On information and belief, AssuredPartners admits that plaintiff is an Illinois limited liability company. AssuredPartners is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 3 and, therefore, denies the same.

4.      Defendant Selective Insurance Company of America ("Selective") is a corporation incorporated under the laws of New Jersey. Selective offers insurance coverage to the general public, including to manufacturers and owners of real estate in Illinois. Selective represents to the business community that it offers a wide range of manufacturer's insurance coverages designed to help protect their business, specialty equipment, employees, and more. Selective specifically markets its insurance coverage to businesses, like COI, that fabricate metal products.

**ANSWER:**    On information and belief, AssuredPartners admits that Defendant is a corporation incorporated under the laws of New Jersey. AssuredPartners is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 4 and, therefore, denies the same.

5.      Defendant AssuredPartners of Illinois ("Assured") is an Illinois limited liability company. Assured is an independent insurance broker offering its services to the general public, and specifically markets its services to manufacturing businesses, like COI.

**ANSWER:**      Paragraph 5 is admitted.

6.      Jurisdiction over Selective and Assured is proper because they transact and/or have transacted business in Illinois, and because the occurrences, acts and omissions which form the basis for this action occurred in Illinois.

**ANSWER:**      Responding to paragraph 6, AssuredPartners admits that it is subject to the jurisdiction of this Court.

7.      Venue is proper in Cook County because Selective and Assured transact and/or have transacted business in Cook County; the occurrences, acts and omissions which form the basis for this action occurred in Cook County; the insured property at issue is located in Cook County; and the subject insurance policy was issued in Cook County.

**ANSWER:**      Responding to paragraph 7, AssuredPartners admits that venue is proper in the Northern District of Illinois.

### Factual Background

8.      Plaintiffs maintained an insurance policy with Selective. Specifically, Selective issued to plaintiffs Commercial Policy No. S 2351080 (the "Policy") for the policy period December 15, 2022, through December 15, 2023. A copy of the Policy with all endorsements is attached as Exhibit A.

**ANSWER:**      Responding to paragraph 8, the referenced Policy speaks for itself.

9.      In addition to the base coverage, plaintiffs purchased the ElitePac coverages for the Policy, which include numerous addendums and coverages beyond the base coverage.

**ANSWER:**      Responding to paragraph 9, the referenced Policy speaks for itself.

10. The Policy contains a coinsurance provision which reads, in part: "[Selective] will not pay the full amount of any loss if the value of the Covered Property at the time of the loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property."

**ANSWER:** Responding to paragraph 10, the referenced Policy speaks for itself.

11. The coinsurance provision further reads:

Instead, we will determine the most we will pay, using the following steps:

(1) Multiply the value of the Covered Property at the time of the loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure in Step (1);

(3) Multiply the total amount of the loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure in Step (3).

We will pay the amount in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**ANSWER:** Responding to paragraph 11, the referenced Policy speaks for itself.

12. Pursuant to the Policy, Selective advised plaintiffs that "you may obtain your own insurance replacement cost appraisal" for the Property. The Policy further stated that Selective "will consider and accept, if reasonable, [plaintiffs'] appraisal."

**ANSWER:** Responding to paragraph 12, the referenced Policy speaks for itself. AssuredPartners is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 12 of the Complaint and, therefore, denies the same.

13. Prior to purchasing the Policy, plaintiffs engaged Assured to procure appropriate insurance coverages and limits. To that end, plaintiffs sought, and Assured conducted and

4

provided plaintiffs with a replacement cost appraisal for the Building. Assured's appraisal determined that the estimated cost to reconstruct the Building, as of September 23, 2022, was $8,888,743. A copy of Assured's appraisal which is titled Valuation Detailed Report is attached as Exhibit B.

**ANSWER:**    Responding to paragraph 13, AssuredPartners admits that plaintiff engaged Assured to procure appropriate insurance coverage and that AssuredPartners secured coverage with a reasonable degree of care and accuracy.

14.    Based on Assured's replacement cost appraisal and advice, plaintiffs purchased the Policy from Selective with coverage limits of $9,244,293 for the Building.

**ANSWER:**    Responding to paragraph 14, AssuredPartners admits that plaintiff engaged Assured to procure appropriate insurance coverage and that AssuredPartners secured coverage with a reasonable degree of care and accuracy. The referenced Policy speaks for itself.

15.    The Policy includes, without limitation, the following Policy Coverages and Limits:

> (a)    Building - $9,244,293
> (b)    Business Personal Property - $6,344,000
> (c)    Personal Property of Others - $1,200,000
> (d)    Business Income with Extra Expense - $4,000,000
> (e)    Ordinance or Law – Increased Cost of Construction - $500,000
> (f)    Ordinance or Law – Demolition Cost - $500,000
> (g)    Tenant Improvements and Betterments - $25,000
> (h)    Outdoor Property - $100,000
> (i)    Inland Marine Related Coverages (limits based on specific coverages)

**ANSWER:**    Responding to paragraph 15, the referenced Policy speaks for itself.

### The Peddinghaus Machine

16.    COI's business relies heavily on various pieces of heavy-duty machinery.

5

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 16 of the Complaint and, therefore, denies the same.

17.    The most integral machine to COI's business is a model BDL1250/9B automated saw and drill beam line handler that was manufactured by the Peddinghaus Corporation (the "Peddinghaus Machine").

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 17 of the Complaint and, therefore, denies the same.

18.    COI purchased the Peddinghaus Machine in February 2023 and contracted with Peddinghaus to install it.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 18 of the Complaint and, therefore, denies the same.

19.    On May 13, 2023, Peddinghaus completed its installation of the Peddinghaus Machine at the Building and certified that it was operational and in good working order.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 19 of the Complaint and, therefore, denies the same.

20.    In May and June of 2023, COI used the Peddinghaus Machine to fabricate 150 tons of structural steel for a project.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 20 of the Complaint and, therefore, denies the same.

21.    The Peddinghaus Machine performed without any issues or errors during the course of the May-June 2023 project.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 21 of the Complaint and, therefore, denies the same.

**The Roof Collapse**

22.     On July 2, 2023, a heavy rainstorm occurred in Chicago, Illinois. According to the National Weather Service, "Chicago-O'Hare Airport received 3.35" of rain on July 2nd, [2023] which surpassed Chicago's previous daily record rainfall for this date of 2.06" set on July 2, 1982."[1] In fact, "[t]his was the highest daily rainfall total to be observed at Chicago-O'Hare Airport since May 2020, when O'Hare received 3.53" of rain on May 14 and 3.11" of rain on May 17."[2] Federal and state authorities declared the event a major disaster.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 22 of the Complaint and, therefore, denies the same.

23.     The excessive rainfall caused the roof covering roughly one-third of the Building to collapse.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 23 of the Complaint and, therefore, denies the same.

24.     The July 2, 2023 catastrophe was a true "boom" event. Due to the sheer weight of the water, the force of the collapse bent several structural steel roof support beams, shattered the concrete floor and plumbing and sewer lines, and caused the fire sprinkler system to break apart and spray water until first responders arrived to turn off the main water valve. The hundreds of thousands of pounds of water that had collected on and collapsed the roof flooded into the Building and caused extensive damage to plaintiffs' Building, equipment, and machinery. All the while, the heavy rain continued to fall unimpeded into the Building.

---

[1] *July 2, 2023. Significant Flash Flooding in Chicago and Nearby Suburbs, National Weather Service available at https://www.weather.gov/lot/2023_07_02_Flooding (last visited March 26, 2025).*
[2] *Id.*

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 24 of the Complaint and, therefore, denies the same.

25. As a direct result of the roof collapse, the Building and other Covered Property (as defined in the Policy), including COI's business inventory and equipment and machinery used for its fabrication work, suffered catastrophic physical damage.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 25 of the Complaint and, therefore, denies the same.

26. The Peddinghaus Machine suffered significant damage due to water infiltration when the roof collapsed.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 26 of the Complaint and, therefore, denies the same.

27. Immediately after the collapse, COI's operations manager, Enrique Montes, went to the Property and assessed the damage.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 27 of the Complaint and, therefore, denies the same.

28. Montes noted that, in addition to the massive amounts of water that had infiltrated the Building, the roof collapse also caused the sprinkler system at the Property to activate, further damaging the COI's machinery within the Building.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 28 of the Complaint and, therefore, denies the same.

29. In an effort to mitigate moisture damage to the Peddinghaus Machine, Montes placed tarps over it.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 29 of the Complaint and, therefore, denies the same.

30.     COI is co-owned by Jonathan Samek and Munish Mehta. When the roof collapsed, both owners of COI were out of state. Samek was in Florida, Mehta was in Europe.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 30 of the Complaint and, therefore, denies the same.

31.     Upon learning of the collapse, Samek returned to Chicago within six hours. Mehta was back within forty-eight hours.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 31 of the Complaint and, therefore, denies the same.

32.     Selective assigned Ronald Rudow, its Executive General Adjuster, to adjust plaintiffs' claim.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 32 of the Complaint and, therefore, denies the same.

33.     Rudow first appeared at the Building one week following the roof collapse.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 33 of the Complaint and, therefore, denies the same.

**Claim History**

34.     On July 2, 2023, the same day the roof collapsed, Assured submitted a property loss notification on plaintiffs' behalf to Selective under the Policy. Plaintiffs' claim on their Policy proceeded under Claim No. 22504865.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 34 of the Complaint and, therefore, denies the same.

35.     On September 1, 2023, plaintiffs sent a letter forwarding a draft list of the submitted portion of plaintiffs' claim that identified over $3,500,000 in equipment property losses. The September 1, 2023 letter (including the list) is attached as Exhibit C.

9

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 35 of the Complaint and, therefore, denies the same.

36.     In their September 1, 2023 letter, plaintiffs advised Selective that COI "has been put in an untenable financial position by the delay in the initial adjustment of this claim." See Exhibit C.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 36 of the Complaint and, therefore, denies the same.

37.     On September 6, 2023, two months after the roof collapsed, plaintiffs, through its hired consultant, BDO USA, P.C. ("BDO"), made their first claim submission to Selective in the amount of $7,268,031. That claim submission did not include the cost to reconstruct the Building. In connection with its claim submission, BDO included voluminous documentation with links available on the designated tabs for ease of reference by Selective.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 37 of the Complaint and, therefore, denies the same.

38.     On October 23, 2023, Selective acknowledged receipt of the property loss notification sent by plaintiffs on July 2, 2023.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 38 of the Complaint and, therefore, denies the same.

39.     On December 22, 2023, nearly six months after the catastrophic roof collapse, plaintiffs emailed Selective and pointed out that they had made virtually everything available that Selective had requested, and specifically noted that "the pace of the adjustment of these claims continues to place unnecessary financial pressure on COI and its principals. Selective needs to staff this claim in a commercially reasonable manner. COI should be in receipt of final adjustments for the BPP and building claim by now."

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 39 of the Complaint and, therefore, denies the same.

40.     In the same December 22, 2023 email, plaintiffs stated that "[t]he principals of COI are under enough stress and pressure trying to operate under the circumstances caused by this loss and have been extremely timely and responsive to each and every request by Selective." Plaintiffs further requested that Selective proceed "with the same sense of urgency as its insured has been. In sum, COI is asking [Selective] to treat its claim with the sense of urgency the claims deserve as we approach the 6-month anniversary of the catastrophe." The December 22, 2023 email is attached as Exhibit D.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 40 of the Complaint and, therefore, denies the same.

41.     On January 5, 2024, Samek, on behalf of plaintiffs, wrote to Selective and asked if Selective would "please review the Elite Pac and advise what other ElitePac coverages we may be entitled to beyond the claim expenses?"

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 41 of the Complaint and, therefore, denies the same.

42.     On January 8, 2024, plaintiffs followed up with Selective and emphasized that "Insurers have a duty to review the policy and advise the insured of all available coverage. To the extent there is a gray area the insurer must inquire of the insured whether the insured is requesting a coverage review." Plaintiffs followed up with a demand for Selective to conduct a coverage review and inform plaintiffs of all coverage available to them under all policy coverages.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 42 of the Complaint and, therefore, denies the same.

43. Selective's adjuster responded on January 8, 2024, asserting that "I am fully aware of Selective's responsibilities to communicate available coverage to COI." . The January 5,2024 through January 8, 2024, emails are attached as Exhibit E.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 43 of the Complaint and, therefore, denies the same.

44. On February 16, 2024, plaintiffs, through BDO, their hired consultant, made their second claim submission to Selective, this time for the claim amount of $20,266,886. This claim submission included expansive supporting documentation clearly labeled and with links available on designated tabs for ease of reference by Selective.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 44 of the Complaint and, therefore, denies the same.

45. On February 20, 2024, plaintiffs again wrote to Selective, attaching a Sworn Statement dated February 16, 2024, as well as a letter dated February 20, 2024. The Sworn Statement is attached as Exhibit F; the February 20, 2024 letter is attached as Exhibit G.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 45 of the Complaint and, therefore, denies the same.

46. The Sworn Statement reflected that the amount claimed by plaintiffs under the Policy, as of February 16, 2024, was $20,266,866.00. The Sworn Statement also noted that the total amount of insurance available under the policy was $21,413,293.00 plus supplemental coverage in addition to the limits.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 46 of the Complaint and, therefore, denies the same. The referenced Policy speaks for itself.

12

47.     In their February 20, 2024 letter, plaintiffs noted that they were "nonplussed by the delays adjusting this claim. The loss or damage occurred more than eight months ago and Selective continues to take interim positions rather than providing final adjustment positions as necessary for COI to make large equipment purchases and other financial commitments so the company can restore operations to pre-loss levels."

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 47 of the Complaint and, therefore, denies the same.

48.     Plaintiffs' February 20, 2024 letter continued: "[t]he record is replete with examples of significant and unjustifiable delays during the adjustment of Claims. We have asked repeatedly for the building claim adjustment to be completed based on reconstruction as the building existed at the time of loss."

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 48 of the Complaint and, therefore, denies the same.

49.     In addition, the February 20, 2024 letter pointed out that, "despite repeated communications advising that the Peddinghaus Machine is inoperative, and a subsequent inspection by the Selective equipment consultant in early January, 2024, no action, aside from a request to confirm the EE amounts attributable to this machine being inoperative, has been taken to adjust this portion of the Claims."

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 49 of the Complaint and, therefore, denies the same.

50.     On March 1, 2024, eight months after the catastrophic roof collapse, Selective advised plaintiffs that it had retained counsel. Selective's counsel noted that they were "in the process of evaluating this claim to prepare a response" to COI's February 20, 2024 letter.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 50 of the Complaint and, therefore, denies the same.

51. Plaintiffs responded on March 4, 2024, and requested that Selective provide them "a date when we can expect to receive your response and your client's adjustment of these claims. As you may know, Selective is on the clock and its response to the proof of loss ("POL") delivered by its insured (whether via payment or denial) must be received no later than March 20, 2024."

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 51 of the Complaint and, therefore, denies the same.

52. On March 20, 2024, Selective sent a more expansive response to the February 20, 2024 letter. A copy of the March 20, 2024 response from Selective is attached as Exhibit H. In the March 20, 2024 letter, Selective acknowledged that plaintiffs had submitted "thousands of pages of back-up documents including tax filings, financial statements, inventory records and expert evaluations."

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 52 of the Complaint and, therefore, denies the same.

53. Additionally, in its March 20, 2024 letter, Selective wrote that "it has not been established that any alleged issues with [the Peddinghaus] machine were caused by or relate to this loss. This remains an open issue that requires further investigation and evaluation."

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 53 of the Complaint and, therefore, denies the same.

54. On April 15, 2024, Selective wrote to plaintiffs, advising of "a potential coverage issue under the Policy." The April 15, 2024 letter is attached as Exhibit I. Selective asserted that its "initial evaluations did not indicate there was a coinsurance concern. However, as we have

14

obtained additional estimates and further evaluated the repair costs, it appears that there might be a coinsurance issue."

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 54 of the Complaint and, therefore, denies the same.

55. In its April 15, 2024 letter, Selective claimed for the first time that "[b]ased on Selective's estimate outlined above, the estimated cost to replace the Building is $12,129,261. Therefore, it appears that the Building is underinsured." The estimate was not based on the overall cost to replace the Building but rather on a prorated calculation based on repair costs for the roughly one-third of the Building that was damaged when the roof collapsed.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 55 of the Complaint and, therefore, denies the same.

56. Selective acknowledged its obligation to pay plaintiffs on a Replacement Cost Valuation ("RCV") basis.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 56 of the Complaint and, therefore, denies the same.

57. Neither Rudow nor anyone else at Selective disclosed that Selective had previously completed a replacement cost appraisal for the Building in the amount of $10,161,303.78 five days after the roof collapsed. With a 90% coinsurance calculation, as set forth in the Policy, the relevant coinsurance calculation based on Selective's replacement cost appraisal was $9,145,173.40, less than the coverage limits purchased by plaintiffs. Based on Selective's replacement cost appraisal, no coinsurance limit or penalty applies, and plaintiffs are entitled to recover for the full extent of their losses.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 57 of the Complaint and, therefore, denies the same.

58.    On July 5, 2024, one year after the catastrophic roof collapse, plaintiffs wrote again to Selective. The July 5, 2024 letter is attached as Exhibit J. In their July 5, 2024 letter, plaintiffs detailed the litany of occasions where they had produced information that Selective had failed to review regarding the Peddinghaus Machine. In particular, plaintiffs noted that Selective "failed to respond to important communications related to the beam line and, more often than not, contended he did not receive data that was sent weeks and often months earlier."

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 58 of the Complaint and, therefore, denies the same.

59.    On August 14, 2024, plaintiffs wrote yet again to Selective. A copy of the August 14, 2024 letter is attached as Exhibit K. In their August 14, 2024 letter, plaintiffs noted that Selective "failed to respond or substantively address over $6 million in claims related from the loss and has done nothing but equivocate for the last 10 months."

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 59 of the Complaint and, therefore, denies the same.

60.    Plaintiffs also pointed out that Selective's delays in addressing plaintiffs' claims relating to the Peddinghaus Machine continued to harm COI on an ongoing basis, and provided specific examples of issues COI was experiencing, including that the Peddinghaus Machine was experiencing a "failure of the internal electronic systems that read CNC files (DSTV format) and auto-measure cuts and holes in steel beams resulting in smooth finished ends and accurate drilled holes up to 0.1mm" and that from "January to July 31, 2024 COI has incurred at least $3 million in extra labor costs due to the failure of the automation system incorporated into the [Peddinghaus Machine] by the manufacturer."

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 60 of the Complaint and, therefore, denies the same.

16

61.     On November 21, 2024, plaintiffs sent Selective a proposal for repair work at the Building totaling $6,336,172, which included line items for concrete and slab work. A copy of the November 21, 2024 email is attached as Exhibit L.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 61 of the Complaint and, therefore, denies the same.

62.     On November 25, 2024, plaintiffs sent Selective a proposal for plumbing and sewer repairs in the amount of $590,430. A copy of the November 25, 2024 email is attached as Exhibit M.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 62 of the Complaint and, therefore, denies the same.

63.     On December 5, 2024, plaintiffs wrote to Selective and requested that Selective withdraw its coinsurance contention. A copy of the December 5, 2024 letter is attached as Exhibit N.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 63 of the Complaint and, therefore, denies the same.

64.     On December 9, 2024, plaintiffs wrote to Assured and put them on notice of plaintiffs' potential claims for professional negligence in connection with Assured's brokerage services in procuring the Policy. A copy of the December 9, 2024 letter (without its enclosure) is attached as Exhibit O.

**ANSWER:**     Responding to paragraph 64 of the Complaint, AssuredPartners admits receipt of the December 9, 2024 letter. The claims and allegations made in the referenced letter are denied.

65.     On December 20, 2024, plaintiffs wrote another letter to Selective, listing plaintiffs' continued and repeated attempts to prod Selective to address outstanding claim items.

A copy of the December 20, 2024 letter is attached as Exhibit P. As noted in the December 20, 2024 letter, plaintiffs referred to email correspondence on November 25, 26, and 27, 2024, providing information and documentation, and "[n]ot only has Selective failed to issue any payment, it failed, despite our requests, to provide us a date by which we can expect payment or even some type of response."

> **ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 65 of the Complaint and, therefore, denies the same.

66. In the December 20, 2024 letter, plaintiffs sent Selective a chart reflecting the unaddressed coverage items, amounting to a $7,814,153.40 in covered items that had not been paid (or denied) by Selective.

> **ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 66 of the Complaint and, therefore, denies the same.

67. On January 14, 2025, more than 18 months after the roof collapse, Selective finally conducted an Examination Under Oath ("EUO") of Samek regarding COI's claim related to the Peddinghaus Machine. Ahead of the examination, plaintiffs provided Selective with a report from Philip Anderson, the owner of AIG Machine Services, who had been servicing the Peddinghaus Machine. In his report of January 11, 2025, Anderson concluded that the issues with the Peddinghaus machine were "Most likely [caused when] moisture entered through the connector and caused one or more of the conductors to short out causing the cable to overheat, which melted the insulation." He stated: "These issues will continue due to the exposure to water...Due to the exposure to water and the sensitivity that these machines have to it, I would recommend replacing the machine in its entirety." A copy of Anderson's January 11, 2025 report is attached as Exhibit Q.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 67 of the Complaint and, therefore, denies the same.

68. On January 21, 2025, Selective provided plaintiffs with a spreadsheet, indicating the replacement cost for the Building was $4,829,555 pursuant to an "ITV360 valuation". Selective later indicated that the valuation was for an unrelated claim and was inadvertently included in the spreadsheet. Plaintiffs subsequently made a written demand for any building valuation for the Building.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 68 of the Complaint and, therefore, denies the same.

69. On January 31, 2025, plaintiffs wrote to Selective and set forth an itemized list of outstanding coverage matters that remain unresolved. The January 31, 2025 letter to Selective is attached as Exhibit R. Among other things, plaintiffs pointed out that Selective repeatedly failed to follow up with decisions or information regarding coverage in conjunction with numerous different coverage provisions that had been discussed on an ongoing basis for the prior several months.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 69 of the Complaint and, therefore, denies the same.

70. Plaintiffs concluded the January 31, 2025 letter by noting that "once more COI is in a position of waiting for Selective not only to respond and make coverage decisions but to even advise when a response or decision will be forthcoming. COI continues to suffer economically from Selective's delay[.]"

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 70 of the Complaint and, therefore, denies the same.

71.     Plaintiffs followed up via email on February 4, 2025, writing: "Gentlemen, Selective's delay on the plumbing issue has hit the critical stage. Deadlines are being missed. We need a decision. Please advise."

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 71 of the Complaint and, therefore, denies the same.

72.     On February 11, 2025, plaintiffs sent Selective their proposal for the concrete/slab work totaling $798,899 (exclusive of the general contractor's customary fee of 20%), which had been omitted from Selective's adjustment. A copy of the February 11, 2025 email is attached as Exhibit S. Selective has failed to explain why it has not adjusted a nearly $800,000 claim despite the passing of 20 months since the loss.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 72 of the Complaint and, therefore, denies the same.

73.     Plaintiffs had previously sent Selective the same proposal on November 21, 2024, nearly three months earlier. See Exhibit L.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 73 of the Complaint and, therefore, denies the same.

74.     Selective has failed to explain why it has not adjusted a nearly $800,000 claim despite the passing of 20 months since the loss.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 74 of the Complaint and, therefore, denies the same.

75.     Additionally, in the February 11, 2025 email, plaintiffs explained that the Peddinghaus Machine has not operated properly since the loss, "and it wasn't until COI started running jobs that it became evident that the machine was not running properly. Prior to the loss, COI had a run a significant job without any issue."

20

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 75 of the Complaint and, therefore, denies the same.

76. On February 20, 2025, plaintiffs wrote to Selective stating that Selective "cannot avoid its legal and contractual obligations by refusing to take a position on COI's claimed losses and extending the adjustment period indefinitely." A copy of the February 20, 2025 letter is attached as Exhibit T. The letter continued, stating: "[t]o put Selective's delay in perspective, COI submitted its Sworn Statement in Proof of Loss on February 16, 2024, over one year ago. Since (and even before) then, COI's efforts to have its claim adjusted have been met with delay and requests for information that was previously provided."

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 76 of the Complaint and, therefore, denies the same.

77. The February 20, 2025 letter itemized eleven separate items that plaintiffs had repeatedly sought coverage for, and that Selective had failed to adjust. As stated in the letter, plaintiffs have "seen no progress in Selective's adjustment of the outstanding claims, and its continued delay is not only vexatious and unreasonable; it is inexplicable."

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 77 of the Complaint and, therefore, denies the same.

78. On February 28, 2025, pursuant to plaintiffs' earlier request, Selective sent plaintiffs a letter disclosing for the first time the replacement cost appraisal for the Building, which Selective prepared on July 7, 2023, five days after the catastrophic roof collapse. A copy of the February 28, 2025 letter is attached as Exhibit U. In its letter, Selective admitted that its appraisal showed that "the [B]uilding was properly insured from a co-insurance perspective". Meanwhile, Selective had withheld its replacement cost appraisal and told plaintiffs that their

recovery would be limited under the Policy's coinsurance provision which Selective's own valuation showed was patently false.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 78 of the Complaint and, therefore, denies the same.

79.     Selective's own replacement cost appraisal, prepared by its Executive Adjuster, Ronald Rudow, five days after the loss, estimated the replacement cost for the Building was $10,161,303.78. With a 90% coinsurance calculation, as set forth in the Policy, the coinsurance amount based on Selective's valuation was $9,145,173.40. That amount is less than the $9,244,293.00 amount of coverage limits plaintiffs obtained for the Building.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 79 of the Complaint and, therefore, denies the same.

80.     Had it not been for Selective's inadvertent inclusion of the replacement cost appraisal for an alleged unrelated claim, it is likely that plaintiffs would still be unaware that Selective had performed a replacement cost analysis that showed the Building was adequately insured and plaintiffs' recovery would not be limited by the Policy's coinsurance provision.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 80 of the Complaint and, therefore, denies the same.

81.     Despite plaintiffs' requests, Selective has failed and refused to provide the replacement cost valuation Selective calculated prior to issuing the Policy.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 81 of the Complaint and, therefore, denies the same.

82.     In short, less than a week after the loss, Selective: (a) determined that plaintiffs had purchased appropriate coverage limits for the Building and that the Policy's coinsurance

22

provision would not limit plaintiffs' recovery but; (b) withheld the valuation; and (c) then informed plaintiffs that they their recovery would be limited by the coinsurance provision.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 82 of the Complaint and, therefore, denies the same.

83.    Selective has subsequently advised plaintiffs that it will not provide any additional coverage for the reconstruction of the Building due to the coinsurance provision.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 83 of the Complaint and, therefore, denies the same.

84.    In its February 28, 2025 letter, Selective said it would pay outstanding Claim Expenses in the amount of $1,322.50 and outstanding Additional Costs in the amount of $25,000. Despite agreeing to pay these amounts, Selective without cause or justification has failed to remit these payments. See Exhibit U.

**ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 84 of the Complaint and, therefore, denies the same.

**The Policy**

84.    The Policy contains a Building and Personal Property Coverage Form, which requires Selective "to pay for direct physical loss or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss."

**ANSWER:**    Responding to the second paragraph 84, the referenced Policy speaks for itself.

85.    The Policy contains and ElitePac Property Extension Endorsement which modifies the base coverage of the Policy adding numerous coverage extensions, including but not limited to providing coverage the increased cost of construction and outdoor property to comply with Law and Ordinances.

    **ANSWER:**    Responding to paragraph 85, the referenced Policy speaks for itself.

    86.    The Policy defines Covered Property to include, without limitation, plaintiffs' "Building, meaning the building or structure described in the Declarations...." and "Your Business Personal Property... [which] consists of...: (1) Furniture and fixtures; (2) Machinery and equipment; (3) "Stock"; (4) All other personal property owned by you and used in your business; (5) Labor, materials or services furnished or arranged by your on personal property of others...."

    **ANSWER:**    Responding to paragraph 86, the referenced Policy speaks for itself.

    87.    The Policy defines "Covered Causes of Loss" as "direct physical loss unless the loss is excluded in this policy".

    **ANSWER:**    Responding to paragraph 87, the referenced Policy speaks for itself.

    88.    Direct physical loss of or damage to plaintiffs' Covered Property, including without limitation, the Building and Business Personal Property, resulted from the July 2, 2023, storm, which falls within the Policy definition of Covered Cause of Loss.

    **ANSWER:**    AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 88 of the Complaint and, therefore, denies the same.

    89.    The Policy further provides that Selective "will pay for the cost to replace or restore electronic data [defined to include computer software] which has been destroyed or corrupted by a Covered Cause of Loss."

    **ANSWER:**    Responding to paragraph 89, the referenced Policy speaks for itself.

    90.    The Policy further requires Selective to pay for plaintiffs' "expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss...."

    **ANSWER:**    Responding to paragraph 90, the referenced Policy speaks for itself.

24

91.     The Policy further provides: "In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property...."

**ANSWER:**     Responding to paragraph 91, the referenced Policy speaks for itself.

92.     The Policy further provides that Selective: "[W]ill pay Extra Expense (other than the expense to repair or replace property) to: (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location."

**ANSWER:**     Responding to paragraph 92, the referenced Policy speaks for itself.

93.     The Policy obligates Selective to pay for Additional Costs in the form of legal and accounting fees not to exceed $25,000 resulting from the damage to the Building.

**ANSWER:**     Responding to paragraph 93, the referenced Policy speaks for itself.

94.     The Policy contains a Business Income (and Extra Expense) Coverage Form, which provides coverage for lost income and expenses incurred while the Covered Property is restored.

**ANSWER:**     Responding to paragraph 94, the referenced Policy speaks for itself.

95.     The Policy contains a form titled Inland Marine Premier PAC, which provides in pertinent part that: "We will pay for direct physical loss or damage to Covered Property from any of the Covered Causes of Loss." The Covered Property in that coverage form includes COI's "mobile machinery and equipment normally used in [its] contracting, servicing, installation, erection, fabrication, repair or moving operations or projects and similar mobile machinery and equipment of others[.]"

25

**ANSWER:**     Responding to paragraph 95, the referenced Policy speaks for itself.

96.     The Policy contains a Systems Power PAC endorsement that provides in part, "[Selective] will pay for the direct physical damage to Covered Property" that is the direct result of "an accident". The provision further defines "accident" as "a fortuitous event that causes direct physical damage to "covered equipment". Pursuant to the endorsement, "If 'covered equipment' requires replacement due to an 'accident', [Selective] will pay [plaintiffs'] additional cost to replace with equipment that is better for the environment, safer, or more efficient than the equipment being replaced." The endorsement defines "covered equipment" as "Covered Property that generates, transmits or utilizes energy." The endorsement limits Selective's payment obligation to no more than "125% of what the cost would have been to replace with like kind and quality."

**ANSWER:**     Responding to paragraph 96, the referenced Policy speaks for itself.

## COUNT I

## BREACH OF CONTRACT

### (Plaintiffs v. Selective)

97.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 96 above as Paragraph 97 of this Count I as though fully set forth herein.

**ANSWER:**     Responding to paragraph 97, AssuredPartners incorporates its responses to paragraphs 1 through 96, as set forth above.

98.     The storm and roof collapse constituted a Covered Caused of Loss to the Covered Property under the Policy. Therefore, the Policy provided insurance coverage for plaintiffs' claim and required Selective to pay for resulting damage, including, without limitation to plaintiffs' Building and Business Personal Property due.

26

**ANSWER:** Paragraph 98 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 98 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

99.    Selective accepted coverage for plaintiffs' claim under the Policy.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 99 of the Complaint and, therefore, denies the same.

100.    Selective has not denied plaintiffs' claim under the Policy.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 100 of the Complaint and, therefore, denies the same.

101.    Plaintiffs have repeatedly requested that Selective provide a comprehensive breakdown of coverage, including what items that Selective has provided coverage for.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 101 of the Complaint and, therefore, denies the same.

102.    Although Selective has acknowledged its obligation to communicate available coverages and its coverage positions to plaintiffs, it has failed to do so.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 102 of the Complaint and, therefore, denies the same.

103.    The Policy constitutes a valid and enforceable contract.

**ANSWER:** Paragraph 103 makes no allegations as to Assured Partners and contains legal conclusions, which require no response.

104.    Plaintiffs performed their material obligations under the Policy, including paying for all premiums.

27

**ANSWER:**    Paragraph 104 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 104 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

105.    Selective has breached the Policy by failing to pay plaintiffs for matters insured by the Policy.

**ANSWER:**    Paragraph 105 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 105 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

106.    Pursuant to the Policy, Selective is obligated to provide insurance coverage for plaintiffs' covered losses and redress the damage caused to the plaintiffs' Covered Property, including without limitation, to the Building and Business Personal Property, as well as for other covered costs and expenses.

**ANSWER:**    Paragraph 106 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 106 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

107.    Selective has breached the Policy by failing to pay plaintiffs for their covered losses, costs and expenses under the Policy, including without limitation, as follows:

> (a)    Failed to adjust and/or pay for the loss to the Building in an amount in excess of $3,700,000.
> (b)    Failed to adjust and/or pay for the loss of Business Personal Property, including without limitation, the Peddinghaus Machine in an amount in excess of $1,800,000; machinery known as the LS Blaster in the amount $203,091.07; welders in an amount in excess of $290,000; and machinery known as the Faro Scanner in the amount of $46,130.

28

(c)     Failed to adjust and/or pay plaintiffs their additional cost up to and including 125% of what the cost would have been to replace their covered equipment which generates, transmits or utilizes energy, including without limitation, the Peddinghaus Machine, the LS Blaster, the welders and the Faro Scanner with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

(d)     Failed to adjust and/or pay plaintiffs' claim for plumbing and sewer repairs in excess of $628,000.

(e)     Failed to adjust and/or pay $253,018.17 in construction costs under the Ordinance and Law coverage provision despite previously authorizing the work on August 19, 2024.

(f)     Failed to adjust and/or pay $235,617.53 for debris removal following the storm.

(g)     Failed to adjust and/or pay plaintiffs for the full replacement cost for Business Personal Property in an amount in excess of $200,000.

(h)     Failed to adjust and/or pay for the loss of plaintiffs' Blue Beam software program in an amount in excess of $4,800 annually.

(i)     Failed to adjust and/or pay plaintiffs' claim for additional costs for the Policy limit of $25,000 relating to legal fees incurred in connection with COI obtaining a lease for temporary space and accounting fees related to reporting requirements stemming from the loss.

(j)     Failed to adjust and/or pay plaintiffs' claim expenses in the amount of $1,322,450 related to the investigation of their claim, determination of the amount of their loss, and the costs of preparing specific loss documents and supporting exhibits.

(k)     Failed to adjust and/or pay plaintiffs' expenses for a lock replacement in the amount of $2,153.00.

(l)     Failed to adjust and/or pay for plaintiffs' expenses for IT services in the amount of $32,073.22.

**ANSWER:**     Paragraph 107 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 107 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

108.     Plaintiffs have been damaged by Selective's breach of the Policy in that its Covered Property has been damaged and Selective has failed and refuses to make the required payments under the Policy in an amount in excess of $7,800,000.

**ANSWER:**   Paragraph 108 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 108 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

## COUNT II

## VIOLATION OF ILLINOIS INSURANCE CODE

### (Plaintiffs v. Selective)

109.   Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 108 above as Paragraph 109 of this Count II as though fully set forth herein.

**ANSWER:**   Responding to paragraph 109, AssuredPartners incorporates its responses to paragraphs 1 through 108, as set forth above.

110.   The Policy at Section E.4.g (Loss Payment) requires generally that Selective pay for a covered loss within 30 days after it receives the sworn proof of loss unless it has yet to reach agreement on the amount of loss or an appraisal award has been made. It reads in part:

> We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part....

**ANSWER:**   Paragraph 110 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. The referenced Policy speaks for itself.

111.   Similarly, Ill. Admin. Code tit. 50, § 919.50, requires payment to an insured within 30 days for claims not in dispute. It reads in part:

> The company shall affirm or deny liability on claims within a reasonable time and shall offer payment within 30 days after affirmation of liability, if the amount of the claim is determined and not in dispute. For those portions of the claim which are not in dispute and for which the payee is known, the company shall tender payment within said 30 days.

**ANSWER:** Paragraph 111 makes no allegations as to Assured Partners and contains legal conclusions, which require no response.

112. The Illinois Insurance Code enumerates improper claims practices in Section 154.6, including, "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." See 215 ILCS 5/154.6.

**ANSWER:** Paragraph 112 makes no allegations as to Assured Partners and contains legal conclusions, which require no response.

113. Plaintiffs submitted their proof of loss statement on February 16, 2024. Twenty months later, Selective has failed to adjust and/or pay plaintiffs for its covered losses in excess of $7,800,000.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 113 of the Complaint and, therefore, denies the same.

114. As detailed above, Selective has engaged in improper claim practices identified in Section 154.6, including, without limitation, by failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed, and as follows:

> (a) Knowingly misrepresenting relevant facts to plaintiffs or policy provisions relating to coverages at issue;
> (a) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;
> (b) Failing to adopt and implement reasonable standards for the prompt investigations and settlement of claims arising under its policies;
> (c) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
>
> ***
>
> (h) Refusing to pay claims without conducting a reasonable investigation based on all available information;
> (i) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> ***
>
> (m) Delaying the investigation or payment of claims by requiring plaintiffs to submit a preliminary claim report and then requiring subsequent

31

submission of formal proof of loss forms, resulting in the duplication of verification;

(n)    Failing in the case of the denial of a claim or the offer of a compromise settlement to promptly provide a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial or compromise settlement.

**ANSWER:**    Paragraph 114 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 114 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

115.    Section 155(1) of the Illinois Insurance Code provides as follows:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)    $60,000;

(c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

**ANSWER:**    Paragraph 115 makes no allegations as to Assured Partners and contains legal conclusions, which require no response.

116.    Due to Selective's improper claims practices and its unreasonable and vexatious delay in settling plaintiffs' claim, plaintiffs have lost the use of their Covered Property and Business Personal Property and COI is unable to competitively bid projects as it lacks the necessary machinery and warehouse capacity.

**ANSWER:**    Paragraph 116 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 116 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

117.    Due to Selective's improper claims practices and its unreasonable and vexatious delay in settling plaintiffs' claim, COI has suffered increased labor costs and diminished profitability due to the loss, failure and errors of its machinery, including the Peddinghaus Machine, the LS Blaster, and the Faro machine, that Selective has failed to properly adjust.

**ANSWER:**    Paragraph 117 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 117includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

118.    Selective's improper claims practices and its unreasonable and vexatious delays have caused significant damage to plaintiffs beyond the damage to the Covered Property, including, but not limited to, COI's lost profits to date in excess of $8,600,000 and COI's continued lease payments in the approximate monthly amount of $27,000 for temporary space.

**ANSWER:**    Paragraph 118 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 118 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

119.    The date of plaintiffs' loss was July 2, 2023, and plaintiffs submitted their Sworn Statement of Loss on February 16, 2024. Selective has failed and refused to adjust the claim and pay for the required coverages.

33

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 119 of the Complaint and, therefore, denies the same.

120. There is no justifiable basis for Selective to have failed to fully adjust plaintiffs' claim and fully pay for plaintiffs' covered losses.

**ANSWER:** Paragraph 120 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 120 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

121. Not only has Selective failed to adjust and/or pay for plaintiffs' clearly covered losses, including completely failing to address the damage to the Building's concrete slab and failing to pay Claim Expenses and Additional Costs that it agreed to pay, it has advanced untenable positions.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 121 of the Complaint and, therefore, denies the same.

122. Selective has advanced a coinsurance argument for repairs to the Building which its own valuation, which it had withheld from plaintiffs, showed to be false.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 122 of the Complaint and, therefore, denies the same.

123. Further, Selective has contended and maintains that plaintiffs' claim in excess of $628,000 for the repairs to their sewer and plumbing systems pursuant to the Policy's Ordinance and Law coverage provisions is not covered because it believes plaintiffs are not required to comply with Chicago's current building code. Selective's position is at direct odds with Title 18 of the Municipal Code of Chicago, which provides:

18-29-102.4 Additions, alterations or repairs.

34

> Additions, alterations, renovations or repairs to any plumbing
> system shall conform to that required for a new plumbing system
> without requiring the entire existing plumbing system to comply
> with all the requirements of this chapter. Additions, alterations or
> repairs shall not cause an existing system to become unsafe,
> insanitary or overloaded.

**ANSWER:** Paragraph 123 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 123 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

124. Further, Selective has contended that plaintiffs should repair their plumbing system without regard to meeting the requirements for a new plumbing system until such time as the City of Chicago stops them or cites them for a violation.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 124 of the Complaint and, therefore, denies the same.

125. The unpaid portion of plaintiffs' covered losses stemming from the loss on July 2, 2023, currently exceeds $7,800,000.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 125 of the Complaint and, therefore, denies the same.

126. Selective's actions are wrongful, vexatious, unreasonable, and unjustifiable.

**ANSWER:** Paragraph 126 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 126 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

127. Pursuant to Section 155 of the Illinois Insurance Code, Selective is liable to plaintiffs for their attorneys' fees, costs, and additional damages pursuant to statute.

**ANSWER:** Paragraph 127 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 127 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

**COUNT III**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**

**(Plaintiffs v. Selective)**

128. Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 125 above as Paragraph 126 of this Count III as though fully set forth herein.

**ANSWER:** Responding to paragraph 128, AssuredPartners incorporates its responses to paragraphs 1 through 127, as set forth above.

129. On July 2, 2023, the date of plaintiffs' loss, the value of their Covered Property was severely diminished and remains diminished through the date of the filing of this Complaint.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 129 of the Complaint and, therefore, denies the same.

130. Notwithstanding the severe diminishment of the value of plaintiffs' Covered Property, Selective continued to unfairly charge plaintiffs premiums as if the Covered Property had retained its full value for the period of July 2, 2023, through December 15, 2024.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 130 of the Complaint and, therefore, denies the same.

131. Charge plaintiffs premiums as if the Covered Property had retained its full value for the period of July 2, 2023, through December 15, 2024 was deceptive and/or unfair.

**ANSWER:** AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 131 of the Complaint and, therefore, denies the same..

132.     Selective intended that plaintiffs rely on its deceptive and/or unfair conduct and that they would pay premiums at an artificially elevated rate for insurance coverage for the diminished property as if the Covered Property had retained its full value.

**ANSWER:**     Paragraph 132 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 132 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

133.     By way of example, although COI's Peddinghaus Machine was significantly diminished to the point that it needs to be replaced and has a replacement value in excess of $1.8 million, Selective continued to charge and receive from plaintiffs premiums for coverage of the Peddinghaus Machine. Similarly, Selective continued to charge and receive from plaintiffs premiums for coverage for the Building commensurate with its prior value as if there was no loss.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 133 of the Complaint and, therefore, denies the same.

134.     Charging an insured premiums for coverage of property with no or diminished value on the same basis as property with full value offends public policy, causes substantial injury to consumers, and is immoral, unethical, oppressive, or unscrupulous.

**ANSWER:**     Paragraph 134 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 134 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

135.     Selective's deceptive and/or unfair conduct occurred in a course of conduct involving trade and commerce, specifically in providing insurance coverage to a business consumer.

37

**ANSWER:**    Paragraph 135 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 135 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

136.    As a proximate result of Selective's deceptive and/or unfair conduct, plaintiffs have been damaged by paying in excess of $90,000 in premiums for insurance coverage that far exceeded the value of the property Selective was insuring.

**ANSWER:**    Paragraph 136 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 136 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same,

137.    Selective's deceptive and/or unfair conduct violated the Illinois Consumer Fraud Act, 815 ILCS 505/1, et. seq.

**ANSWER:**    Paragraph 137 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 137 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

138.    Pursuant to Sections 10 (a) and (c) of the Illinois Consumer Fraud Act, 815 ILCS 505/10 (a) and (c), plaintiffs are entitled to recover from Selective their actual economic damages, punitive damages, and attorney's fees and costs.

**ANSWER:**    Paragraph 138 makes no allegations as to Assured Partners and contains legal conclusions, which require no response. To the extent that paragraph 138 includes averments of fact, AssuredPartners is without sufficient information knowledge or information to admit or deny the allegations and, therefore, denies the same.

## COUNT IV (IN THE ALTERNATIVE)

## PROFESSIONAL NEGLIGENCE

### (Plaintiffs v. Assured)

139.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 14 above as Paragraph 139 of this Count IV as though fully set forth herein.

**ANSWER:**    Responding to paragraph 139, AssuredPartners incorporates its responses to paragraphs 1 through 138, as set forth above.

140.    Plaintiffs engaged Assured to advise them and to procure insurance coverage for them with sufficient coverage and policy limits to insure against losses, including catastrophic losses, to their property.

**ANSWER:**    Responding to paragraph 140, AssuredPartners admits that it was engaged by Plaintiffs and that AssuredPartners procured insurance coverage with a reasonable degree of care and accuracy.

141.    As an insurance broker and producer, Assured owed plaintiffs a duty of reasonable and ordinary care and skill in renewing, procuring, binding, or placing the insurance on their behalf. An insurance broker owes plaintiffs a duty to inform them of all material facts within Assured's knowledge and to exercise reasonable skill and diligence in obtaining insurance of their behalf.

**ANSWER:**    Paragraph 141 contains legal conclusions, which require no response. To the extent that paragraph 141 includes averments of fact, they are denied.

142.    To ensure that they procured insurance with sufficient coverage and policy limits on plaintiffs' behalf, Assured conducted a replacement cost appraisal for the Building and advised plaintiffs to obtain insurance coverage for the Building with coverage limits of no less than $$8,888,743.

39

**ANSWER:**     Responding to paragraph 142, AssuredPartners admits that it was engaged by Plaintiffs and that AssuredPartners procured insurance coverage with a reasonable degree of skill and diligence.

143.     Plaintiffs relied on the advice and judgment of Assured and authorized Assured to procure insurance with Selective on their behalf with coverage limits for the Building of $9,244,293

**ANSWER:**     Responding to paragraph 143, AssuredPartners admits that it assisted Plaintiffs with the procurement of insurance with a reasonable degree of skill and diligence. Paragraph 143 contains legal averments, which require no response. The referenced Policy speaks for itself.

144.     Assured procured an insurance policy from Selective on plaintiffs' behalf with coverage limits for the Building of $9,244,293.

**ANSWER:**     Responding to paragraph 144, the referenced Policy speaks for itself.

145.     Selective has refused to provide full coverage to plaintiffs for their covered losses and has relied on the Policy limit for the Building for its position.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 145 of the Complaint and, therefore, denies the same.

146.     Selective asserts that plaintiffs' recovery is limited by the Policy's coinsurance provision and that plaintiffs' will incur a coinsurance penalty by seeking full coverage for its losses.

**ANSWER:**     AssuredPartners is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 146 of the Complaint and, therefore, denies the same.

147.     Plaintiffs deny that the coverage limits they purchased were insufficient to cover the full extent of their losses and deny that any coinsurance limit or penalty is triggered by their

claim. However, to the extent there is a finding, ruling, verdict or judgment that plaintiffs'
recovery is limited by the Policy's coinsurance provision and/or that a coinsurance penalty
applies, Assured would have breached its duty of care to plaintiffs by providing plaintiffs an
unreasonably low replacement cost appraisal for the Building, advising plaintiffs to purchase an
insurance policy with insufficient coverage limits for the Building, and by failing to procure
sufficient insurance coverage for the Building.

      **ANSWER:**    Paragraph 147 is denied.

      148.    Plaintiffs deny that the coverage limits they purchased were insufficient to cover
the full extent of their losses and deny that any coinsurance limit or penalty is triggered by their
claim. However, to the extent there is a finding, ruling, verdict or judgment that plaintiffs'
recovery is limited by the Policy's coinsurance provision and/or that a coinsurance penalty
applies, but for the actions of Assured, plaintiffs would not be subject to a coinsurance penalty or
otherwise would have recovered the full replacement cost for the damaged portions of the
Building.

      **ANSWER:**    Paragraph 148 is denied.

      149.    Plaintiffs deny that the coverage limits they purchased were insufficient to cover
the full extent of their losses and deny that any coinsurance limit or penalty is triggered by their
claim. However, to the extent there is a finding, ruling, verdict or judgment that plaintiffs'
recovery is limited by the Policy's coinsurance provision and/or that a coinsurance penalty
applies, plaintiffs will have been damaged by Assured's breach of its duty in the amount of their
reduced recovery due to the co-insurance provision.

      **ANSWER:**    Paragraph 149 is denied.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs have failed to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are barred by the applicable statute of limitations.

3.      Plaintiffs' claims are barred in whole or in part by waiver, laches, and estoppel.

4.      Plaintiffs have failed to mitigate their damages.

5.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to satisfy all conditions precedent to their coverage.

6.      Plaintiffs are barred from recovery as to AssuredPartners because their alleged damages are speculative, hypothetical, and there is no ripe controversy at this time.

7.      Plaintiffs' damages, if any, were caused in whole or in part by the acts of third persons other than AssuredPartners.

8.      Plaintiffs' damages, if any, were caused in whole or in part by the acts of Plaintiffs, who bear the burden to know and understand their needs for coverage and the contents of their policies.

9.      Plaintiffs' claims are barred by the assumption of risk because Plaintiffs knew or were on notice of the scope of their insurance policy and voluntarily undertook the risk that led to the damages that Plaintiffs allege to have suffered.

10.      Plaintiffs' claims should be dismissed as AssuredPartners acted with reasonable competence in diligence and did not violate any applicable duty to Plaintiffs.

11.      AssuredPartners states that at all times material hereto it conducted itself in a commercially reasonable manner in compliance with all laws and industry standards.

12.      AssuredPartners expressly reserves the right to amend its answer and affirmative defenses.

WHEREFORE, Defendant AssuredPartners of Illinois, LLC respectfully requests that the Court enter judgment in its favor and enter an order: (1) dismissing Plaintiffs' Complaint with prejudice with respect to AssuredPartners; awarding AssuredPartners its attorneys' fees and other expenses to the maximum extent permitted by law; and (3) awarding AssuredPartners such other relief as the Court deems just and appropriate.

## JURY DEMAND

Defendant AssuredPartners of Illinois, LLC demands a trial by jury on all issues so triable by right.


Dated: June 6, 2025                               Respectfully submitted,

LATHROP GPM LLP

By:   */s/ Arielle B. McPherson*
       Arielle B. McPherson (ARDC No. 6337863)
       155 North Wacker Drive, Suite 3800
       Chicago, IL 60606
       Tel. (312) 920-3300 | Fax (312) 920-3301
       arielle.mcpherson@lathropgpm.com

       Michael J. Abrams (*admitted pro hac vice*)
       Carrie E. Josserand (*admitted pro hac vice*)
       2345 Grand Blvd., Ste. 2200
       Kansas City, MO 64108
       Tel. (816) 292-2000 | Fax (816) 292-2001
       Michael.abrams@lathropgpm.com
       Carrie.josserand@lathropgpm.com

       ***Attorneys for Defendant AssuredPartners of Illinois, LLC***

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on June 6, 2025, a true and correct copy of the

foregoing First Amended Answer was filed via the Court's electronic filing system and was

served via electronic mail upon the following counsel of record:

> Richard M. Goldwasser
> Andrew S. Johnson
> SCHOENBERG FINKEL BEEDERMAN
>   BELL GLAZER LLC
> 300 S. Wacker Drive, Suite 1500
> Chicago, IL 60606
> (312) 648-2300
> richard.goldwasser@sfbbg.com
> andrew.johnson@sfbbg.com
>
> *Attorneys for Plaintiffs*
>
> Michael P. Baniak
> Dennis M. Dolan
> Zachary G. Stillman
> LITCHFIELD, CAVO, LLP
> 303 West Madison, Suite 300
> Chicago, IL 60606
> (312) 781-6596
> Baniak@litchfieldcavo.com
> Dolan@litchfieldcavo.com
> Stillman@litchfieldcavo.com
>
> *Attorneys for Defendant*
> *Selective Insurance Company of America*

>    */s/ Arielle B. McPherson*   
> **An Attorney for Defendant**
> **AssuredPartners of Illinois, LLC**