**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHICAGO ORNAMENTAL IRON, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:25-cv-05131 |
| v. ) | |
| ) | District Judge: Hon. Mary M. Rowland |
| SELECTIVE INSURANCE CO. OF AMERICA, ) | |
| et al. ) | Magistrate Judge: Hon. Young B. Kim |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' THIRD MOTION TO COMPEL**

Plaintiffs Chicago Ornamental Iron, Inc. ("COI"), 4340 W. 47th St. LLC ("4340 LLC"), and 4340 Holdings LLC ("4340 Holdings") (collectively, "Plaintiffs"), by their undersigned attorneys, move[1] the Court for the entry of an order compelling Defendant Selective Insurance Company of America ("Selective") to: (1) conduct and certify a reasonable supplemental search; (2) produce additional responsive, nonprivileged documents and communications; (3) provide a document-specific privilege log for withheld claim notes and related materials; (4) provide a sworn declaration regarding the handwritten notes and discarded paper file of its Executive General Adjuster, Ron Rudow ("Rudow"); (5) produce a Rule 30(b)(6) witness or, alternatively, reopen Rudow's deposition on improperly blocked factual subject areas; and (6) pay Plaintiffs' fees and expenses incurred in bringing this motion. In support, Plaintiffs state as follows:

---

[1] This is Plaintiffs' third motion to compel against Selective. Plaintiffs first moved to compel on August 27, 2025, after Selective failed to timely respond to Plaintiffs' initial written discovery. Dkt. 35. The Court granted that motion on September 15, 2025, ordered Selective to produce responsive documents and pay $1,000 in fees, and authorized Plaintiffs to file a second motion if Selective's production remained deficient. Dkt. 41. On December 19, 2025, Plaintiffs filed a second motion to compel directed to Selective's objections to certain interrogatories and requests for production, which remains pending before the Court. Dkt. 50.

**INTRODUCTION**

In this insurance-coverage action, Plaintiffs seek to recover from Selective for covered losses resulting from the July 2, 2023 roof collapse at Plaintiffs' factory and for Selective's failure to properly adjust the claim. Plaintiffs' present motion to compel arises from three related discovery failures: Selective did not conduct a reasonable search of obvious custodians and repositories; it failed to produce core claim-handling materials while insisting its production was complete; and it blocked deposition testimony on nonprivileged facts underlying positions Selective has affirmatively put in issue.

The search failure is concrete, not speculative. Carl Walton ("Walton"), Selective's Director of Large Loss, Property, testified that he supervised Rudow on the claim, had "lots of conversations" with him, and communicated with him by phone and email. He also testified that no one asked him to review his emails, check his texts, collect documents, or otherwise participate in the discovery process. Selective nonetheless defends its production on the theory that everything relevant should already have been uploaded into its claims content management system ("CCM"). That is not a search; it is an assumption.

The production and testimony failures are equally clear. Walton testified that reserve-setting began with a serious loss report ("SLR") prepared by Rudow, moved up the chain through supervisors and the Large Loss Committee, and was ordinarily handled by email, with approvals returning by email. Yet Selective has not produced the SLR materials or related reserve emails. Plaintiffs also advised Selective that attachments to produced emails—including Selective's valuations of Plaintiffs' building—were missing. Selective is still withholding those attachments more than a year after the suit has been filed. The centrality of these valuations cannot be emphasized enough. Plaintiffs' recovery for the roof collapse is premised on the value of its

building and Selective's defense is anchored in its claim that the building was not insured to its value.

Selective further stopped producing claim notes after June 10, 2025 based on a blanket work-product cutoff and blocked Rudow from answering questions about the factual basis for Selective's answer and labor-position defense. Plaintiffs raised these issues in their March 11, 2026 Rule 37 letter and repeated meet and confers; Selective promised supplementation by April 3, then April 6, and still did not supplement. Plaintiffs therefore request an order compelling a reasonable supplemental search, production of the missing materials, a compliant privilege log, and additional testimony on the blocked factual subjects.

## BACKGROUND

### I.  The Walton and Rudow depositions exposed substantial gaps in Selective's collection and production.

Walton testified that he supervised Rudow during the claim, had "lots of conversations" with him about the claim, communicated with him by phone and email, and that emails between them regarding the adjustment of the claim would have been normal. Ex. B, Walton Tr. 24:23-25:19. He also testified that no one asked him to review emails, check text messages, or participate in collecting documents for production. *Id.* 25:20-26:15. Walton further testified that he did not know what documents had or had not been produced. *Id*.

Walton also testified that reserve-setting began with Rudow preparing an SLR and forwarding it to Walton; if the amount exceeded Walton's authority, the SLR went to their supervisors and then to the Large Loss Committee. *Id*., 13:5-22. Walton testified this process was ordinarily handled by email, that approvals came back down the chain by email, and that the approval document was "just an e-mail." *Id*., 14:7-19; 15:7-22.

3

The claim-note record shown to Walton confirmed the same process. Walton testified that a note reading "CCM upload, approved and distributed SLR" meant Rudow had uploaded the SLR or the email distributing the SLR, and that "approved and distributed" meant the Large Loss Committee had approved it. *Id.*, 69:20-70:20. Walton was then shown a note reflecting Large Loss Committee approval of reserves in excess of $10.5 million and payment authority to that amount. *Id.*, 70:17-71:17. Walton later testified that another February 29, 2024 note reflected Large Loss Committee approval increasing reserves to $13,849,879, and that if asked why the reserve was increased he "would have to look at the SLR." *Id.*, 81:20-82:14.

Rudow confirmed that Selective stored documents in a separate CCM repository and that if he received an email with attachments, he could move the entire email and attachments into CCM. Ex. C, Rudow Tr. 46:3-47:6. Rudow also testified that multiple vendors and consultants were involved in the claim, including JDH, Envista, Morgan Johnson Carpenter, J.S. Held, and RCF, and that at least some vendor work was communicated through informal emails rather than formal reports. *Id.*, 35:21-44:5; 69:15-70:19.

## II. Plaintiffs identified the deficiencies, met and conferred, and Selective still has not supplemented.

Pursuant to Local Rule 37.2, Plaintiffs certify that they made good-faith efforts to resolve the issues raised in this motion without court intervention, including by sending a detailed deficiency letter dated March 11, 2026 (see Ex. A) and participating in telephonic meet and confers on March 23 and April 6. Despite those efforts, the parties were unable to resolve these disputes.

Plaintiffs' March 11, 2026 deficiency letter identified, among other things: (1) Selective's failure to conduct a compliant supplemental collection from Walton and other supervisory custodians; (2) missing SLRs, reserve-setting materials, reserve-approval emails, and Large Loss Committee materials in Selective's production, which it had certified as "complete"; (3) missing

4

internal claims guidelines[2]; (4) uncertainty regarding Rudow's handwritten notes; (5) incomplete valuation reports, vendor reports, and transmittal-email production; (6) improper categorical withholding of post-June 10, 2025 claim notes without a privilege log; and (7) improper instructions blocking examination of Rudow on factual matters reflected in Selective's answer to the complaint. The letter also specifically noted that Plaintiffs had raised, in earlier February 16 correspondence, the separate problem that attachments to every email in Selective's production had not been produced. Ex. A, p. 2; *see also* Ex. D, Feb. 16, 2026, correspondence.

In the meet and confer that followed, Selective represented that it would provide supplemental documents or, alternatively, an affidavit saying production was complete, and that it would produce reserve-setting materials and other responsive items by April 3, 2026. No supplementation was made on April 3. Selective then requested an extension to April 6. Ex. E, April 2, 2026, correspondence. Selective still has not provided the promised supplementation and on April 6 refused to identify a date by which it would supplement its discovery responses.

**LEGAL STANDARD**

Under Rule 26(g), a party's discovery responses must be signed after a reasonable inquiry. Fed. R. Civ. P. 26(g). A party's Rule 26(g) certification must rest on an actual reasonable inquiry, not on assumptions about what the client's systems should have captured. *See* Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment ("the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand"); *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 159-61 (N.D. Ill. 2023) (holding Rule 26(g) governs whether a party

---

[2] Plaintiffs moved this Court to compel production of Selective's internal claims guidelines. Dkt. 50. Walton's and Rudow's testimony confirm that the guidelines are relevant and that the Court should compel their production. See Ex. B, 21:2-22:13; Ex. C, 23:13-25:22.

conducted a reasonable inquiry and that scrutiny of an opponent's collection process requires "specific and tangible evidence of a material failure" in that inquiry); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 953 (N.D. Ill. 2021) ("Counsel are only permitted to rely on their clients' assertions if that reliance is appropriate under the circumstances…. Blind reliance on a client's representation is rarely a reasonable inquiry."); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2020 WL 2838806, at *4-7 (N.D. Cal. June 1, 2020) (sanctioning counsel for failing to adequately supervise collection and requiring the producing party to redo its collection "with the direction and supervision of counsel" and to describe "with specificity" what it did to search for and collect responsive documents).

Rule 34 governs requests to produce documents and electronically stored information, and Rule 37(a)(3)(B)(iv) authorizes the requesting party to move to compel when a party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 34(a)(1); Fed. R. Civ. P. 37(a)(3)(B)(iv). Rule 37 likewise authorizes an order compelling an answer where a deponent fails to answer a question and authorizes an award of fees and expenses where a motion to compel is granted. Fed. R. Civ. P. 37(a)(5)(A).

Rule 30(c)(2) further provides that objections at deposition must be stated concisely and in a nonargumentative, nonsuggestive manner, and that examination proceeds subject to the objection. Fed. R. Civ. P. 30(c)(2). A witness may be instructed "not to answer only when necessary to preserve a privilege, enforce a court-ordered limitation, or present a motion under Rule 30(d)(3)." *Id.* Rule 30(d)(2) authorizes appropriate sanctions when the fair examination of the deponent has been impeded, delayed, or frustrated. Fed. R. Civ. P. 30(d)(2).

**ARGUMENT**

### I. Selective failed to conduct a reasonable collection and cannot substitute assumptions about its claims systems for an actual search.

Selective's defense of its production has been that everything relevant should already have been uploaded into its CCM claim-management system and produced through the claim file. Walton's testimony disproves that the issue was ever tested through an actual search. Walton was a central supervisory custodian. He testified that he had "lots of conversations" with Rudow about the claim, that those communications occurred by phone and email, that claim-related emails between them would have been normal, and that no one ever asked him to review his emails, check his phone for text messages, or participate in collection. Ex. B, 25:10-26:15.

That is not a reasonable inquiry. If Selective never searched Walton's email and text repositories, it cannot credibly state that no additional responsive communications exist outside the claim file. A party may not certify discovery based on what it believes its systems were supposed to capture while declining to search the repositories where responsive communications ordinarily reside. *LKQ*, 345 F.R.D. at 159-61; *DR Distributors*, 513 F. Supp. 3d at 953. Walton's testimony is particularly significant because he supervised Rudow, participated in reserve-setting discussions with Rudow and their supervisors, and was part of the chain through which major reserve approvals moved. Ex. B, 12:14-17; 13:12-22.

The same reasoning applies to other identified custodians and repositories. Walton testified that his supervisors and the Large Loss Committee were involved in reserve approvals above applicable authority levels and that relevant communications were transmitted by email. *Id.*, 13:5-22; 14:7-19; 15:7-22. If Selective intends to stand on the position that its production is complete, it must show an actual search of those obvious custodians and repositories, not simply say that communications were supposed to have been uploaded.

The Court should therefore order Selective to conduct a targeted supplemental search of the identified custodians, including Walton's and Rudow's supervisors, and repositories, including email, text, phone, and other electronic sources reasonably likely to contain responsive communications. *See* Fed. R. Civ. P. 34(a)(1)(A), 26(g), 26(e), 37(a)(3)(B)(iv); *see also United States ex rel. Liebman v. Methodist Le Bonheur Healthcare*, 2023 WL 3400486, at *7 (M.D. Tenn. May 10, 2023) (requiring targeted searches of identified custodians and supplemental responses confirming complete production of responsive, nonprivileged documents); *Optronic Techs.,* 2020 WL 2838806, at *6–7. If Selective still claims no additional materials exist, it should be required to serve a sworn declaration describing the search process. *See* Fed. R. Civ. P. 26(g); Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment; Fed. R. Civ. P. 37(a)(4); *Optronic Techs.*, 2020 WL 2838806 at *6-7.

## II. Selective should be compelled to produce SLRs, reserve-setting materials, reserve-approval emails, Large Loss Committee materials, and missing email attachments.

Walton testified that reserve-setting began with Rudow preparing an SLR and forwarding it up the chain; that the process was ordinarily handled by email; that questions and revisions could be communicated as the document moved up and down the chain; and that approval came back down by email, indeed by "just an e-mail." Ex. B, 13:5-22; 14:7-19; 15:7-22. Walton then testified that a claim-note entry reading "CCM upload, approved and distributed SLR" meant Rudow had uploaded either the SLR itself or perhaps the email distributing it, and that "approved and distributed" meant Large Loss Committee approval. *Id*., 69:20-70:20. Rudow's deposition likewise reflects claim-note entries stating, "Approved & Distributed SLR" and "Large Loss Committee has approved setting reserves to $10,556,749 and paying that amount." Ex. C, 102:6-18; 103:2-105:20.

Those documents are plainly responsive. SLRs, SLR drafts, reserve-setting materials, reserve-approval emails, Large Loss Committee communications, and related claim-handling documents are central to how Selective evaluated and handled the claim. Plaintiffs requested these materials in their Requests for Production to Selective Nos. 2, 6, and 16. See Ex. F, Plfs.' Req. for Prod. to Selective. Walton's testimony that he would need to look at the SLR to explain later reserve increases only confirms that these are substantive claim documents, not collateral materials. Ex. B, 82:6-8.

Plaintiffs also advised Selective before and again in the March 11 letter that it appeared the attachments to produced emails had not been produced. See Exs. A, D. Counsel for Selective responded that he would work on the issue and try to get the documents ahead of the February depositions, but as of this motion, they have not been produced. That matters because Rudow testified that if he received an email with attachments, he could move the entire email and attachments into CCM. Ex. C, 46:3-47:6. If emails were produced without their attachments, the production is incomplete on its face.

Accordingly, the Court should order Selective, by a date certain, to produce all SLRs, SLR drafts, reserve-setting materials, reserve-approval emails, Large Loss Committee materials, and missing attachments to produced claim emails, or to identify by Bates range any materials it contends already satisfy those requests. The Court should also compel production of these identified categories because Rule 34 reaches designated documents and ESI in a party's possession, custody, or control, Rule 26(e) requires supplementation of materially incomplete responses, and Rule 37(a)(3)(B)(iv) authorizes a motion to compel when a party fails to produce documents requested under Rule 34.

**III.** **Selective cannot withhold all post-June 10, 2025 claim notes based on a blanket date cutoff and must provide a document-specific privilege log.**

Selective's withholding of post-June 10, 2025 claim notes is improper. When Plaintiffs asked Walton why the claim notes ended on June 10, 2025, Selective's counsel stated on the record: "We stopped producing them because at that point, everything was done in preparation for or with respect to litigation, so everything from then on out would have been work product." Ex. B, 83:4-11. That is a blanket date-based cutoff, not a claim of privilege tied to entries or documents.

Even if some later entries are privileged, Selective cannot withhold an entire span of claim notes without identifying the withheld entries and the basis for withholding each one. *See* Fed. R. Civ. P. 26(b)(5)(A) (requiring a party withholding material on privilege or work-product grounds to expressly make the claim and describe the nature of the withheld material so the claim can be assessed); *Club Gene & Georgetti, LP v. XL Ins. Am., Inc.*, 2021 WL 1239197, at *2-3 (N.D. Ill. Apr. 2, 2021) (rejecting blanket privilege/work-product assertions and criticizing deficient privilege logs). Claim notes are not automatically privileged merely because they post-date the filing of suit or involve a time when counsel was active. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119–21 (7th Cir. 1983); *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996); *Club Gene & Georgetti*, 2021 WL 1239197 at *4–5.

That is especially true here because Selective's witnesses described the claim-note and CCM systems as the company's ordinary repositories for documenting what was going on in the claim and storing claim documents. Rudow testified that he intended to include all important information relating to the claim and maintain a full and complete record. Ex. C, 44:19-46:2. Walton testified that the purpose of the log-note system was to make sure Selective could understand what was going on in the claim and support what it was doing. Ex. B, 33:15-34:7; 35:18-36:24. Having relied on those systems to document claim handling, Selective cannot wall

off an entire date range without a usable privilege log. The Court should order Selective to produce all nonprivileged post-June 10, 2025 claim notes and to serve a document-specific privilege log for each withheld entry or withheld document.

### IV. Selective improperly blocked nonprivileged factual examination during Rudow's deposition and should be ordered to provide additional testimony.

Rudow testified that he "participated in the preparation" of Selective's answer. Ex. C, 233:11-17. Because Rudow helped prepare Selective's answer, Plaintiffs were entitled to ask him about the nonprivileged facts underlying Selective's admissions, denials, and defended claim positions. Fed. R. Civ. P. 26(b)(1); *see also Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) (attorney-client privilege protects communications, but "the privilege does not protect disclosure of the underlying facts" and those facts may be obtained by questioning the witness directly); "factual bases" *Huffman v. United States Steel Corp.*, 2024 WL 4264211, at *4 (S.D. Ill. Sept. 23, 2024) (finding the "factual bases" supporting defendant's answer to factual allegations proper topics for deposition); *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 126 (E.D. Mich. 2019) (ordering defendant to designate a Rule 30(b)(6) witness to answer questions about "facts underlying defendant's answer and affirmative defenses").

Yet when Plaintiffs asked Rudow whether specific answered allegations were true, Selective's counsel objected "to any questions about our answer," asserted that the answer had been created in discussions with Rudow but involved attorney-client communications and work product, and stated: "If you're asking him if the allegations are true, the answer to that question is our answer." Ex. C, 234:23-235:14. When Plaintiffs asked whether a quoted statement in the Selective's Answer and Affirmative Defenses to Plaintiffs' Complaint was true, Selective's counsel objected, declared the question asked and answered, and instructed Rudow not to answer

further. *Id.*, 233:11-238:18. That prevented examination into whether Selective's pleaded factual position was actually true.

The same thing happened when Plaintiffs asked about Selective's labor-position defense. Rudow was asked whether it was his determination, based on income information, that COI's workforce was performing production labor in addition to emergency cleanup. Id., 225:14-226:8. Selective's counsel objected that the conclusion had been formulated based on legal analysis after counsel's involvement, then asserted work-product privilege. *Id.* When Plaintiffs later pressed whether the partial denial of the emergency-services claim was based on an inference that COI's employees continued to fabricate steel during the claimed period, counsel for Selective objected on privilege grounds and instructed Rudow not to answer. *Id.*, 227:20-228:6.

Those objections were improper because they blocked inquiry into underlying facts and claim-handling determinations that Selective has affirmatively put into issue. The proper remedy is additional testimony. The Court should therefore order Selective either: (1) to produce a Rule 30(b)(6) witness prepared to testify regarding the blocked factual topics, including the July 7, 2023 valuation and its relationship to Selective's coinsurance position, and the factual basis for Selective's labor/fabrication position; or (2) alternatively, to produce Rudow for a limited reopened deposition at Selective's expense on those topics.

### V. Selective should be required to provide a sworn declaration regarding Rudow's handwritten notes and any discard or destruction of those materials.

Plaintiffs are also entitled to a sworn declaration about Rudow's handwritten notes. Rudow testified that during his initial site visit he took handwritten notes while walking through the property, that those notes "should be" preserved, and that he kept them in his office. Ex. C, 32:1-19. He could not recall whether he had provided them directly to counsel or whether they were

already included in the claim file. *Id*. But later, at the end of his deposition, Rudow testified that if he took notes on a sketch pad or legal pad in 2023 and entered the notes into the file, he "probably" no longer had them. *Id*. 274:23-275:13.

That creates a straightforward preservation-status issue. The notes were responsive. The record now suggests they may once have existed in paper form, may or may not have been uploaded, and may have been discarded or destroyed. Plaintiffs are entitled to a sworn explanation of what happened to them. The Court should order Selective to provide a sworn declaration from Rudow or another competent representative stating: (1) whether handwritten site-inspection notes were created; (2) whether they were uploaded or otherwise preserved; (3) whether they still exist; and, if not, (4) when, how, and by whom they were discarded or destroyed.

**VI.**     **Selective should be compelled to complete its vendor- and valuation-related production, including informal communications, transmittal emails, draft analyses, and Xactimate materials.**

Rudow testified that various vendors, including JDH, Envista, Morgan Johnson Carpenter, J.S. Held, and RCF, all participated in the investigation and adjustment of this claim. Ex. C, 35:21-37:6; 37:13-44:18; 69:15-70:19. He also testified that some of these vendors did not necessarily generate formal reports, and that their communications could consist of phone calls, emails, informal analyses, schedules, and spreadsheets. *Id*. For example, Rudow testified that J.S. Held had no formal reports he was aware of and that any informal reports "would have just been e-mails." *Id*., 43:18-23. He similarly testified that for Envista there were no formal reports he could recall and that there would have been exchanges through phone conversations or potentially emails. *Id*., 40:6-13. Walton likewise testified that CCM should contain all vendor reports and other documents used on the claim. Ex. B, 35:18-36:24.

Plaintiffs also identified a separate valuation-related gap in Selective's production. The

13

depositions confirmed that Selective's missing email attachments include valuation materials central to the parties' dispute. Rudow testified that if he received an email with attachments, he could move the entire email and attachments into CCM, and he acknowledged an email chain including an attached valuation report that was never produced. Ex. C., 46:3–47:6; 83:24–86:7. Walton likewise testified that those valuations showed no coinsurance concern at that time. Ex. B, 48:16–52:23. These missing valuation attachments are critical because Plaintiffs' recovery turns in substantial part on the value of the building, while Selective's defense is anchored in its claim that the building was underinsured.

Plaintiffs' March 11 letter also identified another gap regarding valuation in Selective's discovery responses. Selective's interrogatory responses say it used Xactimate to estimate claimed damages, but Selective has never clearly identified by Bates range what it contends constitutes its complete Xactimate production. See Ex. A, pp. 2-3; Ex. G, pp. 11-12, Selective's Sec. Supp. Ans. to Plfs.' Interrog. 11. If Selective maintains that its valuation and Xactimate production is complete, it should have no difficulty identifying the complete production by Bates range. If not, it should be compelled to produce the missing files and communications. The Court should therefore order Selective, by a date certain, to produce all nonprivileged vendor reports, transmittal emails, missing email attachments, spreadsheets, draft analyses, schedules, Xactimate files, and related communications not already produced, or to identify by Bates range the materials it contends constitute its complete production.

### VII. Selective's conduct warrants fees.

Plaintiffs complied with the Rules and Local Rule 37.2 by sending a detailed Rule 37 deficiency letter and meeting and conferring with Selective. Selective promised supplementation by April 3, sought an extension to April 6, and still has not supplemented. Plaintiffs should not

14

bear the cost of motion practice necessitated by Selective's inadequate search, blanket privilege cutoff, incomplete production, and improper deposition instructions. The Court should award Plaintiffs their reasonable fees and expenses.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant this motion and order Selective, by a date certain, to conduct and certify a reasonable supplemental search; produce the missing nonprivileged claim documents and communications, including SLRs, reserve-setting and reserve-approval materials, Large Loss Committee materials, missing email attachments, vendor and valuation materials, and Xactimate-related materials; provide a sworn declaration regarding Rudow's handwritten notes and any discard or destruction of those materials; produce all nonprivileged post-June 10, 2025 claim notes and a document-specific privilege log; and produce a Rule 30(b)(6) witness on the blocked factual subjects or, alternatively, present Rudow for a limited reopened deposition at Selective's expense. Plaintiffs further request their reasonable attorneys' fees and expenses and such other relief as the Court deems just.

Respectfully submitted,

**Chicago Ornamental Iron, Inc., 4340 W. 47th St. LLC, and 4340 Holdings LLC**

By: */s/ Christopher A. Nelson*
One of Their Attorneys

Richard M. Goldwasser
richard.goldwasser@sfbbg.com
Andrew S. Johnson
andrew.johnson@sfbbg.com
Christopher A. Nelson
christopher.nelson@sfbbg.com
**SCHOENBERG FINKEL BEEDERMAN BELL GLAZER LLC**
300 South Wacker, Dr. Suite 1500
Chicago, Illinois 60606
(312) 648-2300

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, a true and correct copy of the foregoing document has been filed electronically and served on the parties via the Court's electronic filing system or by mail to anyone unable to accept electronic filings. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher A. Nelson*
Christopher A. Nelson

16