# Exhibit A



**Richard M. Goldwasser**
Attorney At Law

300 S. Wacker Drive
Suite 1500
Chicago, IL 60606
T 312.648.2300, Ext. 363
C 312.622.3006
F 312.648.1212
E richard.goldwasser@sfbbg.com

March 11, 2026

**VIA EMAIL**

Michael P. Baniak
baniak@litchfieldcavo.com
Michael G. Cerota
cerota@litchfieldcavo.com
Litchfield Cavo LLP
303 West Madison St., Ste. 300
Chicago, Illinois 60606

> **Re:** *Chicago Ornamental Iron, Inc., et al. v. Selective Insurance Co. of America, et al.*, **No. 1:25-cv-05131 (N.D. Ill.)**

Counsel:

We write under Rule 37 concerning deficiencies in Selective's document production and deposition instructions that improperly blocked factual testimony. The depositions of Ronald Rudow and Carl Walton confirm that Selective failed to produce relevant documents and communications directly responsive to Chicago Ornamental Iron's ("COI") discovery requests. In addition, during Rudow's deposition, Selective refused to permit examination of Rudow concerning Selective's own answer to the complaint, even though Rudow testified that he participated in preparing that answer.

*First*, Walton's deposition confirms significant preservation, collection, and production failures by Selective. Walton is a key document custodian: he supervised Rudow during Rudow's adjustment of COI's claim. He testified that he had "lots of conversations" with Rudow, by phone and email. Yet Walton testified that no one asked him to review his emails, no one asked him to check his phone for texts, and no one contacted him to collect documents for production. (Walton Tr. 24:10-25:15; 25:20-26:15.)

Selective also appears not to have collected, reviewed, or produced documents from other likely custodians with supervisory authority over Walton and this claim, including Matthew Caton and members of the Large Loss Committee. Such documents and communications are responsive, at minimum, to COI's Request for Production Nos. 2, 5, and 6, and likely also to other requests concerning claim handling, valuation, and third-party communications.

**FORWARD THINKING | STRATEGIC COUNSEL**



Selective represented that it "has produced the relevant, unprivileged, non-confidential portions of its claim file." *See* Selective's Supplemental Responses to Plaintiffs' Request for Production of Documents No. 2. Walton's testimony establishes that this statement was incomplete at best.

***Second***, Rudow and Walton's depositions acknowledge the existence of Serious Loss Reports ("SLRs") and related communications that do not appear to have been produced. We raised this issue with you in correspondence dated February 16, 2026, because, in addition to the specific documents identified, it appeared that the attachments to every email in your production were not produced. Mr. Baniak responded that he would "work on this and will get these documents to you ahead of the deposition if possible." Those documents have not been produced as of the date of this letter.

Walton testified that reserve setting began with Rudow preparing an SLR, which then moved up the chain to Walton's supervisors and the Large Loss Committee. He further testified that this process was ordinarily handled by email and that approvals came back down by email. (Walton Tr. 13:5-22; 14:7-19; 15:7-22.) Those materials were responsive to COI's Request for Production Nos. 2, 6, and 16, as well as Interrogatory No. 25, and were not produced, despite Selective's affirmation in its supplemental responses to COI's Request for Production No. 2 that it had "produced the relevant, unprivileged, non-confidential portions of its claim file."

***Third***, both Rudow and Walton confirmed the existence of Selective's internal claim-handling guidelines. Walton testified that Selective has written "claims guidelines," that they are electronic and contain several sections, that he had reviewed them recently, and that they contain references to matters such as timeliness, coinsurance, and property valuation. (Walton Tr. 21:2-22:11.) Rudow likewise testified there are company guidelines addressing what should be in a claim file, that he had reviewed the guidelines recently, and that the guidelines advised to include communications with the insured and others in the claim file. (Rudow Tr. 23:13-24:18.) These guidelines are relevant to Selective's handling of this claim, responsive to COI's Request for Production No. 15, and should have been produced.

***Fourth***, Rudow's deposition confirms the existence of additional responsive materials that either have not been produced or whose preservation status is unclear. For example, Rudow testified that during his initial site visit he drafted notes regarding the building, equipment, and inventory. (Rudow Tr. 71:3-17.) At the end of his deposition, Rudow testified that if he took handwritten notes, he "probably" no longer had them. (Rudow Tr. 274:23-275:13.) Those notes were responsive to COI's Request for Production No. 2 and Interrogatory No. 19. That testimony requires Selective to confirm whether those notes were preserved, uploaded, discarded, or destroyed.

***Fifth***, Rudow testified that multiple third parties were involved in the investigation and adjustment, including Envista, JDH, J.S. Held, MJC Forensics, and RCF. (Rudow Tr. 35:21-37:3; 69:15-70:19.) Selective's interrogatory responses likewise state that Rudow, Envista, JDH, and RCF representatives inspected the property and that their reports were produced. *See* Selective's

2



Second Supplemental Answers to Plaintiffs' Interrogatories No. 10. Selective's vendor- and estimate-related production also appears incomplete in another respect. Selective's interrogatory responses also state that it used Xactimate to estimate the amount of claimed damages. If Selective contends that its Xactimate production is complete, it should identify by Bates range the documents and files it contends constitute its complete Xactimate production. Otherwise, Selective should produce all nonprivileged Xactimate-related materials for this claim, including estimate files, project versions, revisions, exports, line-item detail, notes, measurements, pricing inputs, photographs, and communications reflecting how those estimates were prepared, revised, or used. If there are missing transmittal emails from Selective's vendors, draft or final reports, or any other communications, they are responsive and should have been produced in response to COI's Request for Production Nos. 2, 17, and 18, and Interrogatory Nos. 4, 10, 11, 19, and 21.

*Sixth*, Selective appears to have withheld notes in the claim log (Rudow Ex. 2) categorically rather than note by note. In Walton's deposition, when asked why the claim log notes ended on June 10, 2025, Mr. Baniak stated on the record that Selective stopped producing them because, from that point forward, "everything was done in preparation for or with respect to litigation," and therefore "would have been work product." (Walton Tr. 83:4-17.) A blanket date-based cutoff is improper. Selective may not withhold an entire date range of claim notes without a document-by-document privilege log identifying the basis for withholding each entry or withheld document. At minimum, Selective must identify which post-June 10, 2025 entries are being withheld and provide a privilege log sufficient to assess those assertions.

*Seventh*, during Rudow's deposition, Selective refused to permit examination of Rudow about Selective's own answer to the complaint. Rudow testified that he participated in preparing Selective's answer. (Rudow Tr. 233:11-17.) When he was then asked about the truth of specific allegations that Selective had admitted or denied in that answer, counsel objected "to any questions about our answer," asserted that the answer had been created in discussions with Rudow but involved attorney-client communications and work product, and stated: "If you're asking him if the allegations are true, the answer to that question is our answer." (Rudow Tr. 235:7-14.) Plaintiffs were entitled to examine Rudow concerning the allegations Selective admitted, denied, or otherwise answered, particularly where Rudow participated in preparing those responses. Selective cannot place factual positions into its answer and then refuse to permit deposition examination of the witness who helped formulate them.

This issue arose most clearly with respect to Selective's coinsurance and valuation allegations. In its answer, Selective admitted that the April 15, 2024 letter advised of potential coinsurance concerns and admitted the quoted language that the building "appears" underinsured, while denying plaintiffs' allegation that Selective's own prior appraisal showed no coinsurance penalty applied. Yet when Rudow — who helped prepare the answer — was asked whether the relevant answered allegations were true, Selective objected that "the answer … is our answer." (Rudow Tr. 234:11-20; 235:7-14; 237:7-238:18.) That position improperly insulated Selective's pleading positions from examination.

A related problem arose when Plaintiffs examined Rudow about Selective's articulated labor position — namely, that COI's emergency-services labor claim was overstated because

3



income information supposedly showed personnel were working on production and not solely emergency services. When asked whether that was his determination, counsel objected that the conclusion had been formulated based on legal analysis after counsel's involvement. (Rudow Tr. 225:14-226:8.) Selective cannot deny plaintiffs' allegations concerning its claim handling and then prevent examination into whether its claims personnel actually made or adopted the labor-position that Selective has asserted in defending this case.

Accordingly, please confirm by March 18, 2026, that Selective will:

1. Conduct and disclose a compliant supplemental collection from Walton and any other relevant custodians who had supervisory authority over this claim, including email, text, phone, and other electronic repositories.
2. Produce all SLRs, SLR drafts, reserve-setting materials, reserve-approval emails, Large Loss Committee materials, and related claim-handling communications.
3. Produce the internal claims guidelines, manuals, or training materials described by Walton and Rudow.
4. Produce all valuation reports, including all nonprivileged Xactimate-related materials and other valuation materials for this claim, including all estimate files, project versions, revisions, exports, line-item detail, notes, measurements, pricing inputs, photographs, and communications regarding their preparation, revision, review, or use, or identify by Bates range the documents and files Selective contends constitute its complete Xactimate production.
5. State whether Rudow's handwritten notes still exist; if not, explain when and how they were destroyed or discarded.
6. Produce all nonprivileged vendor reports, transmittal emails, spreadsheets, draft analyses, and accounting/labor schedules not already produced.
7. Produce a privilege log for all post-June 10, 2025 claim notes and related withheld materials.
8. Confirm that Selective will produce a Rule 30(b)(6) witness to testify regarding the blocked areas of Rudow's testimony, including (a) the July 7, 2023 valuation, its preparation, use, and relationship to Selective's coinsurance position; and (b) the factual basis for Selective's position limiting the emergency-services claim, including the labor/fabrication analysis and related accounting materials.

Plaintiffs also request a Rule 37 meet and confer regarding these deficiencies and the scope and timing of Selective's Rule 30(b)(6) deposition on these subjects. Please provide your availability for a telephonic or video meet and confer to be held on or before March 18, 2026. If Selective contends that any of the categories identified above have already been produced, please identify by Bates range the documents you contend satisfy those requests before the meet and confer so the parties can address the disputes efficiently.

If Selective does not agree to cure these deficiencies and participate in a prompt meet and confer, Plaintiffs will seek all relief available to them.

Very truly yours,

**SCHOENBERG FINKEL BEEDERMAN BELL GLAZER, LLC**

Richard M. Goldwasser

Cc: Michael J. Abrams
michael.abrams@lathropgpm.com
Carrie E. Josserand
carrie.josserand@lathropgpm.com

5